UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

Lori Precourt, Administrator of the
Estate of Carolyn Black, Lori Precourt,
Individually, and Diana Morrison,

                *Plaintiffs*

  - v. -                                                          Docket No. 1:10-cv-337-LM

Fairbank Reconstruction Corp.,
d/b/a Fairbank Farms, Greater Omaha
Packing Company, Inc., and Shaw's
Supermarkets, Inc.,

                *Defendants.*

## DEFENDANT GREATER OMAHA PACKING CO., INC.'S MOTION TO COMPEL

Defendant-Cross Claim defendant Greater Omaha Packing Co., Inc. (GOPAC), through its attorney Stephen Ellenbecker of the Gloor Law Group, moves pursuant to Local Rule 37.1 to compel Defendant-Cross Plaintiff Fairbank to produce electronic data responsive to discovery requests made in this matter, compel Defendant Shaw's to produce all documents, electronic or otherwise, of inventory tracking and shipments to its stores for September 2009, the deposition of Mr. Dennis Kwider and permit GOPAC to conduct a trial deposition of Mr. Thomas Hoffman.

In March 2011, GOPAC issued written discovery to defendant/cross plaintiff Fairbank. Fairbank responded to these discovery requests on April 6, 2011. In responding, Fairbank produced no additional records and instead, referred GOPAC to documents it had previously produced in two actions pending in the United States District Court for the District of Maine (*Smith v. Fairbank Farms, Inc., et al, v. Greater Omaha Packing Company, Inc.*, Case Number 10-60-P-S and *Long v. Fairbank Farm, Inc., et al, v. Greater Omaha Packing Company, Inc.*,

1

Case Number 09-592-B-S). (Fairbank Farm, Inc. and Fairbank Reconstruction Corp. d/b/a Fairbank Farms' Responses to GOPAC'S First Set of Requests for Production, attached at Ex. A.)  In the production requests, GOPAC made several requests including the following:

**Request NO. 5:**

Any and all documents, including invoices, purchase orders, work orders, Bills of Lading (BOLs), shipping and other documents relating in any way to all sales and shipments of product produced by Establishment No. 492 between June 1, 2009 and October 31, 2009.

**Request NO. 12:**

All daily production and operational records, between June 1, 2009 and October 31, 2009, relating in any way to the daily production as to Establishment No. 492.

**Request NO. 14:**

All distribution records relating in any way to the products produced at Establishment No. 492 between June 1, 2009 and December 3, 2009.

While Fairbank did produce some records responding to the foregoing requests in the Maine actions, it has become apparent that it has not produced any electronic data entered, stored and used to generate the records produced.  By example, Fairbank produced a document labeled a Product Lot Recall sheet. (Product Lot Recall Sheet, attached at Ex. B.)  These Product Lot Recall sheets were used to assist the FSIS with their outbreak investigation and were provided to Fairbank experts.  These sheets are generated by entering parameters for the search as indicated on the document.  Thus, multiple versions of these documents can be prepared from a database of available data depending on the search parameters entered by the one making or directing the inquiry.  In fact, we know that the IT department at Fairbank was involved in the recall work

done by Fairbank and the FSIS as indicated by Fairbank's Chief of Food Safety, Tim Biela. (Biela Deposition of November 5, 2010 at 108:8-19, attached at Ex. C.)

Fairbank disclosed Thomas Hoffman as its lead traceback expert in this matter. (Hoffman Report, attached at Ex. D.) As can be seen from that report, Hoffman identified shipping order 30236 as the order applicable to contaminated product sent by Fairbank to Shaw's and on to consumers. (Ex. D.) Recently, Fairbank withdrew Hoffman as an expert in this matter. (Letter from Weber to Ellenbecker of December 23, 2011, attached at Ex. E.) As a result, Fairbank has no disclosed expert who has identified a single shipping order that marks the allegedly contaminated meat sent by Fairbank to Shaw's and sold to Ms. Black in this matter. That said, at a recent trial in Maine, Fairbank offered multiple witnesses who testified that shipping orders 30243 and 30245 proved to be the shipping orders documenting contaminated product sent to by Fairbank to Shaw's and on to consumers. (Trial transcript, Dr. Melnick at 485:8-12 attached at Ex. F.)

To date, Fairbank has failed to produce Product Lot Recall sheets for shipping orders 30236, 30243, 30245 or the other shipping orders reflecting product sent to Shaw's between June 1, 2009, and October 31, 2009 as requested in Request 5. In addition, Fairbank has also failed to produce all daily production and operational records as requested in Request No. 12 and "all distribution records relating in any way to the products produced at Establishment 492 (Fairbank) between June 1, 2009, and December 3, 2009" as requested in Request 14. Most importantly, Fairbank has failed to produce the electronic data entered, recorded and stored that can be generated into Product Lot Recall sheets, shipping information, daily production and operational records and distribution records.

GOPAC counsel sent a letter to Fairbank seeking records relating to the aforementioned Product Lot Recall sheets as well as all electronic data that could be searched, reflected in and sorted in Product Lot Recall sheets. (Letter from Ellenbecker to Stevens of January 9, 2012, attached at Ex. G.) Pursuant to Rule 37, GOPAC conducted a "meet and confer" conference with Fairbank on January 18, 2012. During this conference, Shawn Stevens, counsel for Fairbank and Shaw's, informed GOPAC counsel Ellenbecker that Fairbank would not produce any electronic data. In its letter confirming the substance of the parties' meet and confer conference, Fairbank fails to address the failure to produce electronic data. Thus, going back to the production first made in the Maine cases – **cases that generated a verdict that Fairbank wants applied in this matter** – Fairbank has utterly failed to abide by the discovery rules and produce all relevant documentation including electronically stored information. Thus, GOPAC asks this Court to permit it to obtain this data from Fairbank through the use of a computer forensic specialist at Fairbank's expense.

Rules 26 and 34 specifically address the need to produce electronically stored information. Fed. R. Civ. P. 26 and 34. In fact, Rule 26 requires a party to produce a copy of or description by category of electronically stored information that would be used in its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(ii). Clearly, Fairbank failed in its initial Rule 26 obligations and then failed to produce the requested information under Rule 34 and to seasonably supplement accordingly.

Interestingly, Fairbank requested assistance similar to that requested here by GOPAC in Maine. (Letter from Weber to Magistrate Rich of September 22, 2010, attached at Ex. H.) While Fairbank ultimately obtained leave to collect mirror images of GOPAC's electronically stored information, it failed to produce its own electronically stored information. Fairbank now seeks

to perpetuate that failing by relying on its Maine production and refusing to produce responsive electronic data.  As a result, it should be compelled to produce the electronic data.

Defendant Shaw's received discovery from GOPAC in June 2011.  Finally, on December 21, 2011, it responded to that discovery and in so doing produced 367 pages of material. (Letter from Weber to Gloor of December 21, 2011, attached at Ex. I.)  Despite its inexplicable delay in responding to discovery, Fairbank objected to GOPAC's motion seeking a clarification of the discovery closure date and asserts that discovery in this matter closed in October 2011. (Dckt. # 65.)  Thus, Shaw's, who is represented by Fairbank's counsel, first produces responsive records two months after its own attorneys argue discovery was closed.

In response to the untimely document production, GOPAC issued a notice and subsequently, a subpoena for the deposition of Shaw's former head of food safety, Dennis Kwider. (Notice and subpoena for Kwider's deposition, attached at Exs. J and K.)  Shaw's/Fairbank's counsel has refused to produce Mr. Kwider for deposition citing the October discovery closure deadline it argues is in effect.   Specifically, Fairbank/Shaw's states that "because discovery has been closed for over three months, we cannot agree to produce [Kwider] for a discovery deposition unless the Court reopens discovery." (Letter from Stevens to Ellenbecker of January 19, 2012, attached at Ex. N.)

This refusal comes despite the fact that Shaw's failed to respond to discovery for six months and then conveniently did so after a date it claims discovery closed.  Surely, this type of discovery gamesmanship is not what was contemplated in the Federal Rules of Civil Procedure.  Shaw's cannot respond to discovery in an untimely fashion and then cite its preferred discovery closure date as a basis to not produce witnesses sought to be deposed based on the information

5

contained in that discovery.  Therefore, Shaw's should be required to produce Dennis Kwider for deposition or in the alternative, permit him to appear for a deposition as subpoenaed.

Finally, Fairbank disclosed Thomas Hoffman as its traceback expert.  After learning that his traceback in Maine was flawed and seeing GOPAC's motion for summary judgment in this matter, Fairbank withdrew Hoffman as an expert the next day. (Letter from Weber to Ellenbecker of December 23, 2011, attached at Ex. E.)  In response, GOPAC issued a subpoena to Mr. Hoffman under Fed. R. Civ. P. 30 and 45 for his deposition.  In the meet and confer conference of January 18, 2012, counsel for Fairbank, Shawn Stevens, indicated that they would not go along with this deposition and in correspondence on the issue, indicated that Fairbank did not believe Mr. Hoffman's testimony was relevant to the action. (Letter from Stevens to Ellenbecker of January 10, 2012, attached at Ex. O.)  Fairbank confirmed this position by stating that it would "continue to object to any deposition of Mr. Hoffman…" (Ex. N.)  Fairbank's stated objection to Mr. Hoffman's deposition is two-fold: 1) Fairbank/Shaw's withdrew Mr. Hoffman as an expert in this matter and 2) Mr. Hoffman may have a medical condition that prevents him from giving a deposition. (Ex. N.)  According to the medical record forwarded by counsel, Mr. Hoffman's "sinus rhythm was restored," "he feels well," "his is in no acute distress," and "his cardiac rhythm is regular." (Ex. N.)  The physician then notes some concern about work related stress and that providing a legal deposition may lead to an unstable cardiac rhythm.  Because of this, the physician asked Hoffman to avoid the deposition. (Ex. N.)

While Mr. Hoffman may have had an episode that required medical treatment, the records indicate that he is fine now.  The doctor's speculation and request to refrain from giving a deposition transparently reveal a desire and request by Mr. Hoffman to avoid the requested deposition.  A witness scuttled at trial after attending for four days, whose reports and pretrial

analysis are subject to post trial motions, whose documentary foundation has repeatedly been characterized as erroneous, mistaken and wrong by Fairbank's counsel in post trial briefing, who was disclosed as an expert in this matter and now is withdrawn one day after GOPAC filed a motion for summary judgment based on Hoffman's flawed analysis now claims he cannot give a deposition.  GOPAC is more than willing to develop a deposition schedule to accommodate any health concerns Mr. Hoffman may have.  This could mean conducting the deposition for short durations over multiple days, taking frequent breaks, taking the deposition in the presence of the court or taking the deposition where he is most comfortable.  Given Mr. Hoffman's role in this case and his resulting opinions, the circumstances surrounding his withdrawal and the circumstances of his health, at the very least, further inquiry should be made of Mr. Hoffman and/or his physician before simply stating that he is unable to give a deposition based on a medical record and counsel's assessment and representation of his condition.

Fairbank counsel also has represented that it believes Mr. Hoffman's testimony is no longer relevant given the withdrawal of him as a witness.  Fairbank thought Mr. Hoffman's opinion and testimony was relevant when it disclosed Mr. Hoffman as its trace back expert in this matter.  The withdrawal of Mr. Hoffman does nothing to diminish the relevancy of his opinions.  In fact, the withdrawal, coupled with the circumstances surrounding Fairbank's decision not to call Mr. Hoffman at the *Smith* and *Long* trial in Maine and Fairbanks unconvincing explanation of those circumstances heightens the relevancy of his testimony.  (GOPAC Resp. to Mot. for Summ. J. Dckt. # 82 and Fairbank Resp. in Opposition to GOPAC'S Motion for Relief from Judgment in Maine at Dckt. #398, attached at Ex. L and M.)  Moreover, GOPAC advised Mr. Stevens through letter and in the meet and confer session that the deposition was for trial purposes and not simply a discovery effort.  Fairbank can cite to no case

or rule that prohibits a party from calling an abandoned witness at trial; thus, GOPAC should be permitted to proceed with the trial deposition of Thomas Hoffman regardless of any determination as to the discovery closure date determined by the Court.

No assent to this motion has been sought as the need to compel is a product of the stalemate with Attorney Stevens.

Due to the nature of this motion, no memorandum is required.

WHEREFORE, GOPAC requests that this Court enter a ruling and command Fairbank/Shaw's to 1) produce and/or permit forensic specialists retained by GOPAC to acquire electronically stored information responsive to production requests 5, 12 and 14; 2) produce Dennis Kwider for deposition; and 3) permit the trial deposition of Thomas Hoffman. GOPAC further requests that Shaw's produce electronic data responsive to GOPAC's production requests, including, but not limited to data regarding ground beef receipt, inventory, shipping and use at the distribution and store level (Store #28) for September 2009.

                                      Respectfully submitted,
                                      **Greater Omaha Packing Company**
                                      By their attorneys,
                                      DEVINE, MILLIMET & BRANCH,
                                      PROFESSIONAL ASSOCIATION

Date: January 25, 2012                  By:   /s/ Andrew D. Dunn, Esquire
                                      Andrew D. Dunn, Esquire (Bar No. 696)
                                      111 Amherst Street
                                      Manchester, NH 03101
                                      (603) 669-1000
                                      ADunn@DevineMillimet.com

                                      D. Patterson Gloor, Esquire
                                      Stephen P. Ellenbecker. Esquire
                                      GLOOR LAW GROUP, LLC.
                                      225 West Wacker Drive
                                      Suite 1800
                                      Chicago, Illinois 60606-1274
                                      312/752-3700

CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing will be sent to counsel of record this day via the Court's Electronic Case Filing system.

Date: January 25, 2012                  By:  /s/ Andrew D. Dunn, Esquire____
                                             Andrew D. Dunn, Esquire (Bar No. 696)
                                             ADunn@DevineMillimet.com